UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| AKARI ENTERPRISES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:11CV02200 AGF |
| | ) | |
| KELLWOOD COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This breach of contract action is before the Court on the motion of Defendant Kellwood Company ("Kellwood") for summary judgment. For the reasons set forth below, the motion shall be denied.

## BACKGROUND

Viewing the facts in the light most favorable to Plaintiff, as the Court must do in considering Kellwood's motion for summary judgment, the record shows the following. Akari Enterprises, LLC ("Akari") provides three kinds of services: assistance in the international development and expansion of fashion companies; mergers and acquisitions advisory services; and executive searches. Andeas Kurz is Akari's managing member and president. Kellwood designs, manufactures, and markets a collection of premier fashion brands and operates retail stores across the United States. It is an affiliated company of Sun Capital Partners, Inc. ("Sun Capital"), which is a private investment firm.

In May 2010, Kellwood entered into a Consulting Agreement with Plaintiff, pursuant to which Plaintiff agreed to provide consulting services to expand the

international business of certain existing Kellwood brands. On July 30, 2010, Plaintiff entered into a second agreement with Kellwood, an Acquisition Advisory Services Agreement (the "Agreement"), to cover acquisition advisory services, whereby Plaintiff would be entitled to a "Contingent Success Fee" if Kellwood acquired new brands that were identified and introduced by Plaintiff. The Agreement provided in relevant parts, as follows:

> 1 … (a) Akari shall develop appropriate Acquisition criteria and identify and review with [Kellwood] on an ongoing basis a list of parties that Akari, in its reasonable business judgment, believes might constitute potential Acquisition prospects ("Prospects");
>
> (b) As directed by [Kellwood], Akari shall initiate contacts with those Prospects that [Kellwood] consents to in advance and introduce such Prospects to [Kellwood], as evidenced by a meeting or telephone conference call among representatives of [Kellwood] and the Prospect (following such introduction, a Prospect becomes an "Approved Target"); …
>
> 3 … (a) <u>Contingent Success Fee</u>. If an Acquisition of an Approved Target occurs at any time during the Term hereof, or during the one (1) year period following the effective date of termination of this Agreement, then [Kellwood] shall pay Akari a contingent success fee ("Success Fee") equal to a percentage of the total consideration paid by [Kellwood] to acquire an Approved Target or a portion thereof ("Purchase Price").

(Doc. No. 45-2.)

According to Plaintiff, in September 2010, Kellwood management requested that Plaintiff introduce Kellwood to Scotch & Soda ("S&S"), a Dutch apparel company, because S&S had previously ignored contact efforts by Kellwood. Kurz used his fashion industry relationships to identify and contact Hans Krouwels, a member of S&S's supervisory board, and told him that there was a United States company that was interested in either investing in or acquiring S&S.

2

At a January 2011 trade show in Berlin, Germany, S&S met with Kellwood. At the trade show, Krouwels said to Kurz, in the presence of Kellwood and S&S representatives, that the meeting between Kellwood and S&S would not be happening were it not for Kurz's persistence. Kurz attended the meeting on behalf of Kellwood.

Also according to Plaintiff, Kellwood was planning to proceed with the S&S purchase on its own until it realized that S&S's sales figures were higher than Kellwood's original information indicated, and that Kellwood would need Sun Capital's approval and participation. Sun Capital purchased the stock of S&S. Under the terms of the sale agreement, Kellwood and its subsidiaries were granted the authority to direct the operations and business of S&S. Kellwood formed Kellwood Scotch, LLC, to hold, manage, and operate S&S's business in the United States.

Kellwood refused to pay Plaintiff a success fee. Plaintiff presented evidence that Kellwood executives thought Plaintiff was entitled to payment for the work that Akari did in connection with bringing S&S and Kellwood together. Plaintiff now seeks the contractual success fee under a theory of breach of contract (Count I); damages under a theory of quantum meruit (Count II); and damages under a theory of breach of the duty of fair dealing (Count III).

## ARGUMENTS OF THE PARTIES

Kellwood argues that it is entitled to summary judgment on Count I because Plaintiff did not "identify" or "introduce" S&S to Kellwood, S&S never became an "Approved Target" for which Plaintiff might have been eligible for a success fee, and Kellwood never purchased S&S, or any part of it. Kellwood argues that it is entitled to

3

summary judgment on Count II because there is an express agreement between the parties, precluding recovery under a quantum meruit theory, and on Count III because there is no evidence that Kellwood purposely structured the acquisition of S&S to deprive Plaintiff of the success fee.

Plaintiff argues that the Agreement does not contain a complete statement of the parties' understanding as to the process of identifying "Approved Targets," and that consideration of the course of conduct of the parties during performance of the agreement is required. Plaintiff argues that the facts show that Plaintiff substantially complied with the Agreement, and that while Sun Capital purchased the stock of S&S, the effect was the transfer to Kellwood of a material portion of the S&S business.

Plaintiff further argues that regardless of the express Agreement, Plaintiff has a viable quantum meruit claim because Plaintiff provided Kellwood with acquisition advisory services at the request of Kellwood, services that had monetary value, and Kellwood refused to pay the reasonable value of Plaintiff's services. Plaintiff maintains that Kellwood demonstrated a violation of the covenant of good faith and fair dealing by evading the spirit of the bargain.

## DISCUSSION

### Summary Judgment Standard

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court must view the record "in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Chambers v. Pennycook*, 641

F.3d 898, 904 (8th Cir. 2011). Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

Missouri law governs this diversity case. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential elements of a quantum meruit claim under Missouri law are (1) that the plaintiff provided to the defendant materials or services at the defendant's request or with the acquiescence of the defendant, (2) that the materials or services had reasonable value, and (3) that the defendant has failed and refused to pay the reasonable value of such materials or services despite the demands of plaintiff. *City of Cape Girardeau ex rel. Kluesner Concreters v. Jokerst, Inc.*, 402 S.W.3d 115, 122 (Mo. Ct. App. 2013).

Under Missouri law, a claim for breach of the implied covenant of good faith and fair dealing is a contractual claim. *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 413 (Mo. Ct. App. 2000). The good faith requirement imposed by law on every contract extends "to the manner in which a party employs discretion conferred by a contract." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 914 (8th Cir. 2007) (applying Missouri law). To establish a violation of the covenant of good faith and fair dealing, a plaintiff must show that the defendant exercised its discretion "in such a manner as to evade the

5

spirit of the transaction or so as to deny [the claimant] the expected benefit of the contract." *Id.*

Upon review of the record, including deposition testimony and email exchanges, the Court agrees with Plaintiff that material factual disputes remain that preclude summary judgment on any of Plaintiff's claims. The role Plaintiff played in bringing S&S and Kellwood together, the considerations and negotiations leading to the acquisition of S&S by Sun Capital, as well as the corporate relationship between Sun Capital and Kellwood are not matters that can be determined as a matter of law, based on the record before the Court. And these factual matters are material to Plaintiff's claims. The Court believes that viewing the facts, and the reasonable inferences to be drawn therefrom, in Plaintiff's favor, Plaintiff could prevail before a fact finder. *See Franke v. Greene*, No. 4:11CV1860 JCH, 2013 WL 411371, at *3 (E.D. Mo. Feb. 1, 2013) (denying summary judgment on claims of breach of agreement and quantum meruit under Missouri law where fact questions remained as to the parties' rights and obligations under their agreement).

With respect to Counts II and III, while Plaintiff cannot recover duplicative damages under different theories of relief, all of its claims remain viable. *See, e.g., Chase Elec. Co. v. Acme Battery Mfg. Co.*, 798 S.W.2d 204, 209 (Mo. Ct. App.1990) (stating that a party may elect to sue either on the contract or in quantum meruit, and a party's pleading may present both theories of recovery).

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Kellwood Company's motion for summary judgment is **DENIED**.   (Doc. No. 43.)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 20th day of September, 2013.